UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>                     Plaintiff,<br><br>  -vs.-<br><br>AMCO HOLDING LLC, DANCO HOLDING LLC, SHALCO PROPERTIES LLC, 72nd STREET HOLDING LLC, the NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, and JOHN DOES #1 THROUGH JOHN DOE 88 inclusive, the names of the last 88 defendants being fictitious, the true names of said defendants being unknown to plaintiff, it being intended to designate any occupants or tenants of the mortgaged premises who are in default in the payment of rent for which a proceeding is now pending by the mortgagor and/or other persons or parties having or claiming an interest in or lien upon the mortgaged premises subordinate to that of the mortgagee, if the aforesaid individual defendants are living, and if any or all of said individual defendants be dead, their heirs at law, next of kin, distributes, executors, administrators, trustees, committees, devisees, legatees and the assignees, lienors, creditors, successors in interest of them, and generally all persons having or claiming under, by, through or against the said defendants named as a class, any right, title or interest in or lien upon the premises described in the complaint herein,<br><br>                     Defendants. | No. __1:24-cv-04135__<br><br>**COMPLAINT** |

Plaintiff Federal National Mortgage Association ("Plaintiff" or "Fannie Mae"), by and through its undersigned counsel, Akin Gump Strauss Hauer & Feld LLP, for its complaint against Defendants AMCO Holding LLC, DANCO Holding LLC, SHALCO Properties LLC, 72nd Street Holding LLC, the New York City Environmental Control Board, and John Does #1 through 88 (the "Complaint") alleges as follows:

**NATURE OF THE ACTION**

1. This is a mortgage foreclosure action on a property located at 244 West 72nd Street, New York, NY 10023 (the "Property"). Plaintiff's mortgage on the Property secures a loan in the principal amount of $13,500,000.00 which has been in default since March 1, 2024. With this action, Plaintiff seeks foreclosure of the Property as its lawful remedy under the governing loan documents as well as a money judgment against AMCO Holding LLC, DANCO Holding LLC, SHALCO Properties LLC, and 72nd Street Holding LLC.

**PARTIES**

2. Plaintiff is a federally chartered corporation organized and existing under the laws of the United States, 12 U.S.C. §1716 *et seq.*, with its principal place of business in Washington, D.C., with offices located at Midtown Center, 1100 15th Street NW, Washington, DC 20005.

3. Plaintiff is the current owner and holder of the Loan Documents (as such term is defined herein). Fannie Mae is a government-sponsored enterprise and a federally chartered entity that Congress created to enhance the nation's housing-finance market. Under its federal statutory charter, Fannie Mae has a public mission to provide liquidity, stability, and affordability to the U.S. housing market, including the market for quality, affordable rental housing. Fannie Mae is operating under the conservatorship of the Federal Housing Finance Agency ("FHFA"), which is an independent agency of the United States created in 2008 to supervise certain Government Sponsored Enterprises including Fannie Mae. *See* 12 U.S.C. § 4511 *et seq.* Among other powers, Congress granted the Director of FHFA the authority to place Fannie Mae into conservatorship under certain, statutorily defined conditions, which the Director did in 2008. As Conservator, FHFA has broad statutory powers, including the powers to preserve and conserve Fannie Mae's assets and property, and to collect obligations due Fannie Mae. FHFA's ability to exercise its

statutory powers and functions as Conservator is protected by federal law. *See, e.g.*, 12 U.S.C. § 4617(f).

4. Defendant AMCO Holding LLC is a New York limited liability company located at 347 Fifth Avenue, New York, New York 10016. Upon information and belief, the members of AMCO Holding LLC are Fred Ohebshalom and Daniel Ohebshalom. Fred Ohebshalom is a citizen of the State of New York and Daniel Ohebshalom is a citizen of the State of California.

5. Defendant DANCO Holding LLC is a New York limited liability company located at 347 Fifth Avenue, New York, New York 10016. Upon information and belief, the members of AMCO Holding LLC are Fred Ohebshalom and Daniel Ohebshalom. Fred Ohebshalom is a citizen of the State of New York and Daniel Ohebshalom is a citizen of the State of California.

6. Defendant SHALCO Properties LLC is a New York limited liability company located at 347 Fifth Avenue, New York, New York 10016. Upon information and belief, the sole member of SHALCO Properties LLC is Fred Ohebshalom, who is a citizen of the State of New York.

7. Defendant 72nd Street Holding LLC is a New York limited liability company located at 347 Fifth Avenue, New York, New York 10016. Upon information and belief, the members of 72nd Street Holding LLC are Fred Ohebshalom, Nader Ohebshalom, and Lisa Ohebshalom each of whom are citizens of the State of New York.

8. Defendant New York City Environmental Control Board, also known as the Office of Administrative Trials and Hearings, is a New York City agency with an office located at 66 John Street, 10th Floor, New York, New York 10038.

9. Defendants "JOHN DOES #1-88" are unknown persons or entities joined as party defendants because they may be tenants and persons in possession of the Property or have some interest in and to the Property (including that of judgment creditors) inferior and subordinate to

that of Plaintiff or may be persons who hold or have collected the rents, issues and profits relating to or arising from the Property.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 in value, exclusive of interests and costs, and is between citizens of different states.

11. For purposes of diversity jurisdiction, Plaintiff is a citizen of Washington, D.C.  12 U.S.C. § 1717(a)(2)(B).

12. For purposes of diversity jurisdiction, Defendant AMCO Holding LLC is a citizen of New York and California because, upon information and belief, it has two members: Fred Ohebshalom (a citizen of New York) and Daniel Ohebshalom (a citizen of California).

13. For purposes of diversity jurisdiction, Defendant DANCO Holding LLC is a citizen of New York and California because, upon information and belief, it has two members: Fred Ohebshalom (a citizen of New York) and Daniel Ohebshalom (a citizen of California).

14. For purposes of diversity jurisdiction, Defendant SHALCO Properties LLC is a citizen of the state of New York because, upon information and belief, it has a single member: Fred Ohebshalom (a citizen of New York).

15. For purposes of diversity jurisdiction, Defendant 72nd Street Holdings LLC is a citizen of New York and California because, upon information and belief, it has three members: Fred Ohebshalom (a citizen of New York), Nader Ohebshalom (a citizen of New York), and Lisa Ohebshalom (a citizen of California).

16. For purposes of diversity jurisdiction, Defendant New York City Environmental Control Board is a New York City agency that is a citizen of New York.

17. This Court has personal jurisdiction over Defendants AMCO Holding LLC, DANCO Holding LLC, SHALCO Properties LLC, and 72nd Street Holding LLC because, *inter alia*, they agreed to submit to personal jurisdiction in New York State according to the terms of the Note, Loan Agreement, and Consolidated Mortgage Agreement (defined *infra*).

18. This Court has personal jurisdiction over Defendant New York City Environmental Control Board because it is a New York City agency with principal place of business in New York State.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because the property that is the subject of this action is located in the Southern District of New York, in New York County, New York.

20. Venue is also proper pursuant to 28 U.S.C. § 1391, because this dispute arises out of the terms of agreements signed by the parties that are governed by New York law and contain forum selection clauses designating this Court as a proper venue.

## FACTUAL ALLEGATIONS

### I. The Mortgage and the Loan Documents

21. On or about April 29, 2016, AMCO Holding LLC, DANCO Holding LLC, SHALCO Properties LLC, and 72nd Street Holding LLC (collectively, the "Borrowers") executed a Consolidated, Amended and Restated Multifamily Note (the "Note") for the benefit of Hunt Mortgage Capital, LLC, n/k/a Lument Real Estate Capital, LLC ("Lument"), the original lender under the Note. Under the terms of the Note, the Borrowers agreed to pay to the holder of the Note (the "Lender") the sum of $13,500,000.00 plus interest. A true and correct copy of the Note is annexed as **Exhibit A** and incorporated herein.

22. On or about April 29, 2016, the Borrowers and Lument entered into a Multifamily Loan and Security Agreement (the "Loan Agreement"). A true and correct copy of the Loan Agreement is annexed as **Exhibit B** and incorporated herein. Under Schedule 2 of the Loan Agreement, the Borrowers were required to make monthly payments on the loan to the Lender on the first day of each month from June 1, 2016 through May 1, 2023 (the "Monthly Payments"). The principal sum and all accrued but unpaid interest was due and payable on the maturity date of May 1, 2023 (the "Maturity Date").[1]

23. In order to secure the indebtedness under the Note, on or about April 29, 2016, the Borrowers executed a Consolidation, Extension and Modification Agreement (the "Consolidation Agreement"). A true and correct copy of the Consolidation Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on May 18, 2016, File No. 2016000169468, is annexed as **Exhibit C** and incorporated herein. Pursuant to the Consolidation Agreement, the Borrowers and Lument entered into a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Consolidated Mortgage Agreement"), which is included as Exhibit C to the Consolidation Agreement. Under the Consolidated Mortgage Agreement, the Borrowers mortgaged to Lument the Property, including, among other things, the structures and buildings upon it, the leases on the property, and the rents and income received on the property (the "Mortgage").

24. Collectively, the Note, the Loan Agreement, the Consolidated Mortgage Agreement, and all attachments thereto and assignments thereof are referred to as the "Loan Documents."

---

[1] Because the Borrowers defaulted by failing to make the payment due on the Final Maturity Date, the loan has been accelerated, and the total outstanding principal and accrued and unpaid interest is immediately due and payable under the Note. *See infra* ¶¶ 46-47.

6

25. Under Section 3 of the Consolidated Mortgage Agreement, the Borrowers executed an Assignment of Leases and Rents (the "Assignment of Rents") to Lender. Under the Assignment of Rents, the Borrowers absolutely and unconditionally assigned and transferred to Lender all "Rents," as that term is defined in the Consolidated Mortgage Agreement. In return, the Lender granted the Borrowers a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender, to apply all Rents to pay the installments of interest and principal due and payable under the Note and the other amounts due and payable under the Loan Documents, and to pay the costs and expenses of managing and maintaining the Property. The Borrowers were further authorized to retain any remaining Rents.

26. Upon the occurrence of an Event of Default (*see* Section 14.01 of the Loan Agreement) under the Loan Documents, the Borrowers' license to collect rents automatically terminates, and Lender is entitled to receive all Rents as they become due and payable. To that end, under Section 3(c) of the Consolidated Mortgage Agreement, the Borrowers agreed to pay any such Rents over to Lender.

## II. The Property

27. The Property is located at 244 West 72nd Street, New York, NY 10023 and is more particularly described as follows:

> ALL that certain ploy, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:
>
> BEGINNING at a point on the southerly side of 72nd Street, distant 230 feet easterly from the corner formed by the intersection of the southerly side of 72nd street with the easterly side of West End Avenue;
>
> RUNNING THENCE southerly parallel with West End Avenue and part of the distance through a party wall, 102 feet 2 inches;
>
> THENCE easterly parallel with 72nd Street, 60 feet;

THENCE northerly parallel with West End Avenue and party of the distance through a party wall, 102 feet 2 inches to the southerly side of 72nd Street;

THENCE westerly along the southerly side of 72nd street, 60 feet to the point or place of BEGINNING.

### III.     Personal Liability of Borrowers

28.     Under Section 3.02(a) of the Loan Agreement, the Borrowers agreed to be held personally liable to Lender "for the repayment of the portion of the Indebtedness equal to any loss or damage suffered by Lender as a result of" certain enumerated items listed therein.  *See* Exhibit B.

29.     Among the items for which the Borrowers agreed to accept personal liability was their failure to pay Lender, upon demand after an Event of Default, all Rents (*see* Section 3.02(a)(1) of the Loan Agreement) to which Lender is entitled under Section 3(a) of the Consolidated Mortgage Agreement and the amount of all security deposits collected by the Borrowers from tenants.  *See* Exhibit B.

30.     Under Section 3.02(b) of the Loan Agreement, the Borrowers agreed to be liable to Lender for the repayment of all the indebtedness due under the Loan Documents, and that the mortgage loan would be fully recourse to the Borrowers, upon the occurrence of certain events, including among other things, a bankruptcy filing by any of the Borrowers.

31.     Under Section 3.03 of the Loan Agreement, the Borrowers agreed to be "personally and fully liable to Lender" for their "indemnity obligations under Section 13.01(e) of [the] Loan Agreement, the Environmental Indemnity Agreement, and any other express indemnity obligations provided by Borrowers under any Loan Document."  Exhibit B.

### IV.     Assignment of the Loan Documents to Plaintiff

32.     On April 29, 2016, Lument assigned the Mortgage and Note to Plaintiff via an Assignment of Consolidated Security Instruments (the "Mortgage Assignment").  A true and

8

correct copy of the Mortgage Assignment, with proof of recording in the New York City Department of Finance Office of the City Register on May 18, 2016, File No. 2016000169469, is annexed as **Exhibit D** and incorporated herein.

33.  On or about April 29, 2016, Lument executed an Assignment of Collateral Agreements and Other Loan Documents to Plaintiff (the "Collateral Agreements Assignment"), which assigned agreements including the Loan Agreement and all other Loan Documents "executed in connection with the Mortgage Loan." A true and correct copy of the Collateral Agreements Assignment is annexed as **Exhibit E** and incorporated herein.

34.  Plaintiff is in possession of the original Note, indorsed to Plaintiff by Lument, which is attached hereto as Exhibit A. By virtue of Plaintiff's possession of the original Note and Lument's indorsement of the Note to Plaintiff, as well as the Mortgage Assignment, Plaintiff became and is still the mortgagee on, and owner and holder of, the Note and Mortgage.

### V.    Defaults, Fees, and Remedies, Including Foreclosure, Under the Loan Documents

35.  Under Section 14.01(a)(1) of the Loan Agreement, any failure by the Borrowers to pay or deposit when due any amount required by the Note, the Consolidated Mortgage Agreement, or any other Loan Document is deemed an automatic "Event of Default." Exhibit B. This includes failure to pay the principal sum and all accrued but unpaid interest due and payable on the Maturity Date.

36.  Under Section 5 of the Consolidated Mortgage Agreement, following an Event of Default, the Lender may declare the entire amount of the indebtedness immediately due and payable, may institute judicial foreclosure proceedings, is entitled to the *ex parte* appointment of a receiver, and may invoke any other remedies permitted by the Loan Documents and New York law. Exhibit C. Lender is also entitled to:

      all expenditures and expenses authorized by applicable law and all other expenditures and expenses which may be paid or incurred by or on behalf of Lender for reasonable legal fees, appraisal fees, outlays for documentary and expert evidence, stenographic charges and publication costs; . . . and [] all additional advances made pursuant to Section 8303 of the Civil Practice Law and Rules of the State of New York and costs . . . of procuring all abstracts of title, title searches and examinations, title insurance policies, and similar data and assurance with respect to title as Lender may deem reasonably necessary either to prosecute any suit or to evidence the true conditions of the title to or the value of the Mortgaged Property to bidders at any sale which may be held in connection with the exercise of Lender's rights and remedies under the Loan Documents. All expenditures and expenses of the nature mentioned in this Section 5, and such other expenses and fees as may be incurred in the protection of the Mortgaged Property and rents and income therefrom and the maintenance of the lien of this Security Instrument, including the fees of any attorney employed by Lender in any litigation or proceedings affecting this Security Instrument, the Note, the other Loan Documents, or the Mortgaged Property, including bankruptcy proceedings, [or] any Foreclosure Event . . . shall be additional Indebtedness and shall be immediately due and payable by Borrowers, with interest thereon at the Default Rate until paid.

Exhibit C.

    37. Under Section 2.02(d)(1)(A) of the Loan Agreement, if any principal, interest, or other indebtedness due under the Loan Documents remains past due for thirty (30) days or more, then interest on such unpaid amount(s) shall accrue from the date payment is due at the "Default Rate." *See* Exhibit B. The Default Rate is defined in the Loan Agreement to be the lesser of "the sum of the Interest Rate plus four (4) percentage points" or "the maximum interest rate which may be collected from Borrowers under applicable law." *See id.*, Schedule 1.

    38. Additionally, under Section 2.02(c) of the Loan Agreement, if any amount payable under the Loan Agreement is not received by Lender within ten days of the due date, the Borrowers are required to pay Lender a late charge. Exhibit B. The late charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate.

    39. Furthermore, pursuant to the Consolidated Mortgage Agreement, the Borrowers agreed to pay all Indebtedness, including all Enforcement Costs, which include, among other things:

10

   all expenses and costs, including reasonable attorneys' fees and expenses, fees and out-of-pocket expenses of expert witnesses and costs of investigation, incurred by Lender as a result of any Event of Default under the Loan Agreement or in connection with efforts to collect any amount due under the Loan Documents, or to enforce the provisions of the Loan Agreement or any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy or insolvency proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding or Foreclosure Event) or judicial or non-judicial foreclosure proceeding, to the extent permitted by law.

Exhibit C.

  40. Finally, under Section 3(g) of the Consolidated Mortgage Agreement, if the Rents are not sufficient to meet the Lender's costs of taking control and managing the Property, Lender is entitled to have any additional funds it expends to operate the Property added to the indebtedness due under the Loan Documents. *See* Exhibit C.

### VI. Modification and Extension Agreements

  41. On May 16, 2023, Plaintiff and Borrowers entered into a Modification and Extension Agreement (the "First Extension Agreement") effective as of May 1, 2023, whereby Plaintiff agreed to extend the Maturity Date of the Note and modified certain terms of the Loan Documents. A true and correct copy of the First Extension Agreement is annexed as **Exhibit F** and incorporated herein.

  42. Under Section 2.01(a) of the First Extension Agreement, Borrowers agreed that they are primarily obligated to Plaintiff for payment and performance of the Note, and that the liens, security interests and assignment created and evidenced by the Consolidated Mortgage Agreement remain in full force and effect. Under Section 2.03 of the First Extension Agreement, the Maturity Date of the Note was extended to September 1, 2023 (the "Extended Maturity Date"). Under Section 2.06 of the First Extension Agreement, Borrowers acknowledged, among other things, that the liens and security interests created and evidenced in the Consolidated Mortgage Agreement are valid and subsisting, that the Consolidated Mortgage Agreement is a first and superior lien on the

Property, and that there are no offsets, claims or defenses to the Note or Consolidated Mortgage Agreement or any other documents evidencing or securing the Mortgage.  Under Section 3.02 of the First Extension Agreement, the Borrowers provided a complete release to Plaintiff.

43. On November 8, 2023, Plaintiff and Borrowers entered into a Second Reinstatement, Modification and Extension Agreement (the "Second Extension Agreement") effective as of September 1, 2023, whereby Plaintiff agreed to extend the Extended Maturity Date of the Note and modified certain terms of the Loan Documents.  A true and correct copy of the Second Extension Agreement is annexed as **Exhibit G** and incorporated herein.

44. Pursuant to Section 2.01 of the Second Extension Agreement, Plaintiff agreed to reinstate the Note, Consolidated Mortgage Agreement, and all other Loan Documents, and Borrowers agreed that they are primarily obligated to Plaintiff for payment and performance of the Note, and that the liens, security interests and assignment created and evidenced by the Consolidated Mortgage Agreement remain in full force and effect.  Pursuant to Section 2.03 of the Second Extension Agreement, the Extended Maturity Date of the Note was further extended to March 1, 2024 (the "Final Maturity Date").  Under Section 2.06 of the Second Extension Agreement, Borrowers acknowledged, among other things, that the liens and security interests created and evidenced in the Consolidated Mortgage Agreement are valid and subsisting, that the Consolidated Mortgage Agreement is a first and superior lien on the Property, and that there are no offsets, claims or defenses to the Note or Consolidated Mortgage Agreement or any other documents evidencing or securing the Mortgage. Under Section 3.02 of the Second Extension Agreement, the Borrowers provided a complete release to Plaintiff.

45. The Final Maturity Date under the Second Extension Agreement expired on March 1, 2024.  Plaintiff did not provide any further extensions.

### VII. Failure to Make Payment Due on Maturity Date

46. On March 1, 2024, the Final Maturity Date, the Borrowers failed to pay the principal sum and all accrued but unpaid interest, as required under the Loan Documents.

47. Such failure to pay the amounts due on the Final Maturity Date constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

### VIII. Demand for Payment of Loan and Termination of License to Collect Rents

48. As of the filing of this Complaint, the Borrowers still have not paid the principal sum and all accrued but unpaid interest, as required under the Loan Documents, that has been due and owing since March 1, 2024.

49. On April 12, 2024, Plaintiff sent a letter to the Borrowers notifying them that they were in default of their obligations under the Loan Documents by virtue of their failure to pay the amounts due on the Final Maturity Date (the "Demand Letter"). A true and correct copy of the Demand Letter is annexed as **Exhibit H** and incorporated herein.

50. In the Demand Letter, Plaintiff demanded that the Borrowers pay immediately all outstanding principal and accrued and unpaid interest under the Note, in its entirety, together with all applicable charges and all costs, expenses, and attorneys' fees incurred by Plaintiff. *See* Exhibit H. Plaintiff notified the Borrowers that, by reason of the defaults, Plaintiff may immediately institute foreclosure proceedings under the Mortgage and may otherwise exercise any and all other rights and remedies enumerated in the Loan Documents or otherwise available at law or in equity. *See id.* These rights and remedies included, without limitation, the appointment of a receiver over the Property. *See id.*

51. Additionally, in the Demand Letter, Plaintiff gave notice that the Borrowers' license to collect Rents at the Property was terminated, and that Plaintiff is now entitled to all Rents as they become due and payable. *See id.* The Demand Letter went on to demand that any Rents collected by the Borrowers after the occurrence of the Event of Default on March 1, 2024 be received and held by the Borrowers in trust for the benefit of Plaintiff, and only applied to "bona fide current operating expenses to third parties in connection with the operation of the property with excess paid to Fannie Mae, to be applied in accordance with the Loan Documents." *Id.*

52. As of the filing of this Complaint, the Borrowers have not turned over any Rents or security deposits to Plaintiff.

## IX.     Liens on the Property

53. Under Section 11.02(a) of the Loan Agreement, the Borrowers "shall not permit the grant, creation, or existence of any Lien, whether voluntary, involuntary, or by operation of law, on all or any portion of the Mortgaged Property (including any voluntary, elective, or non-compulsory tax lien or assessment pursuant to a voluntary, elective, or non-compulsory special tax district or similar regime)." Exhibit B.

54. According to a recently issued title report for the Property, the New York City Environmental Control Board ("NYCECB") has two liens against the Property, each of which is junior to the Mortgage.

55. On March 7, 2023, the NYCECB served a violation notice against the Property for $10,000.00 for failure to safeguard all persons and property affected by construction operations (ticket number 39080948K). That penalty amount remains unpaid.

56. On February 15, 2024, the NYCECB served a violation notice against the Property for $1,250.00 for unsafe conditions (ticket number 37026639R). That penalty amount remains unpaid.

57. The title report also shows a host of other violations and judgments, including one complaint and eleven violations by the New York City Department of Buildings (the "DOB"); eight elevator violations issued by the DOB each with a $3,000 civil penalty totaling $24,000; twenty-seven open boiler violations issued by the DOB, with penalties ranging from $500 to $1500 for each violation; and two open violations issued by the New York City Fire Department.

**X.    Receivership**

58. Upon the occurrence of an Event of Default, the Borrowers acknowledged repeatedly in the Loan Documents that Plaintiff is entitled to the *ex parte* appointment of a receiver to oversee the Property.

59. Section 7.02(a)(2) of the Loan Agreement states that the Borrowers shall "surrender possession of the Mortgaged Property, including all Leases and all security deposits and prepaid Rents, immediately upon appointment of a receiver or Lender's entry upon and taking of possession and control of the Mortgaged Property." Exhibit B.

60. Under Section 3(e) of the Consolidated Mortgage Agreement, "if an Event of Default has occurred . . . Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in Section 3 . . . [and] Borrower[s], by [their] execution of this Security Instrument, expressly consent[] to the appointment of such receiver, including the appointment of a receiver *ex parte*, if permitted by applicable law." Exhibit C.

61. Under Section 3(e) of the Consolidated Mortgage Agreement, the Borrowers further agreed to "shortened time consideration of a motion to appoint a receiver." *Id*.

62. Finally, under Section 3(e) of the Consolidated Mortgage Agreement, the Borrowers further agreed that, "[i]mmediately upon appointment of a receiver . . . possession of the

15

Mortgaged Property and all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property, and all security deposits and prepaid Rents, shall be surrendered to Lender or the receiver, as applicable." *Id*.

## FIRST CAUSE OF ACTION

(Foreclosure of the Mortgage and Deficiency Judgment)

63. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-62 above as though fully set forth herein.

64. The Borrowers have committed an Event of Default under the Loan Documents by failing to pay off the Mortgage in full on the Final Maturity Date. As a result of the Event of Default, Plaintiff is entitled to exercise all rights and remedies under the Loan Documents, including foreclosure of the Property.

65. The following amounts are due and owing under the Loan Documents, no part of which has been paid by the Borrowers, although duly demanded: (a) the outstanding principal sum of $13,500,000.00; (b) accrued but unpaid interest thereon, including interest accruing at the Default Rate since March 1, 2024; (c) late charges; and (d) rental payments and security deposits owed under the Note and Assignment of Rents to be determined. These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the Loan Documents during the pendency of this action, including tax payments, insurance premiums, advances to a receiver to protect and maintain the Property, attorneys' fees and expenses, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts,

16

title reports, statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the Property.

66. Plaintiff has fulfilled all of its obligations under the Loan Documents.

67. Lument has fulfilled all of its obligations under the Loan Documents.

68. No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the Loan Documents, or any part thereof.

69. The New York City Environmental Control Board has been made a defendant by virtue of its outstanding violations against the Property described at greater length herein.

70. The Defendants John Doe # 1 through John Doe # 88 have been made defendants because they are or may be tenants or may be in possession of the Property, or may be corporations or other entities or person who claim, or may claim, a lien against the Property.

71. Any claim that any of the defendants in this action have on the Property is subject and subordinate to the lien of Plaintiff evidenced by and described in the Loan Documents.

72. Plaintiff seeks a judgment, as more fully set forth below, (i) foreclosing the Mortgage on the Property and (ii) awarding Plaintiff a money judgment against the Borrowers for the portion of the total indebtedness due under the Loan Documents equal to any loss or damages suffered by Plaintiff as a result of the items enumerated in Article 3 of the Loan Agreement, including Rents and security deposits as described therein. *See* Exhibit B.

73. Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the Property should be sold subject to the following:

(a) any state of facts that an inspection of the premises would disclose;

(b) any state of facts that an accurate survey of the premises would show;

(c) covenants, restrictions, easements, and public utility agreements of record, if any;

17

  (d) building and zoning ordinances of the municipality in which the Property is located and possible violations of same;

  (e) any rights of tenants or persons in possession of the Property;

  (f) any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale; and

  (g) prior lien(s) of record, if any.

  74. Plaintiff shall not be deemed to have waived, altered, released, or changed any demand made in this Complaint, as a result of any payment made by the Borrowers after the commencement of this action, or any of the defaults mentioned herein, and such demands shall continue and remain effective.

## **PRAYER FOR RELIEF**

  Wherefore, Plaintiff demands judgment as follows:

  (a) That the defendants, and each of them, and all persons claiming under defendants, or any of them, subsequent to the commencement of this action and the filing of a notice of pendency thereof, be barred and foreclosed of and from all estate, right, title, interest, claim, lien and equity of redemption of, in and to the Property and each and every part and parcel thereof;

  (b) That a receiver possessing such powers as those granted to him/her under the Consolidated Mortgage Agreement and applicable law be appointed for the Property;

  (c) That the Property may be decreed to be sold in one or more parcels according to law;

  (d) That the monies arising from the sale of Property may be brought into Court;

  (e) That the amount due Plaintiff under the Loan Documents be adjudged, and that from the monies arising from the foregoing sale, Plaintiff be paid the amount due it under the Loan Documents with interest to the time of such payment, the expenses of sale, and the costs and expenses of this action, including reasonable attorneys' fees and expenses, together with any

monies which may be paid by Plaintiff for taxes, water and sewer charges and assessments, insurance premiums, and all other charges and liens thereon to be paid, with interest at the Default Rate upon such amounts from the dates of the respective payments and advances thereof, so far as the amounts of monies properly allocable thereto will pay the same;

      (f)      That the Borrowers may be adjudged to pay all amounts due under Article 3 of the Loan Agreement for which they agreed to be held personally liable; and

      (h)      That Plaintiff be awarded such other and further relief as shall be just and equitable.

New York, New York
Dated: May 30, 2024

                          Respectfully submitted,

                          **AKIN GUMP STRAUSS HAUER & FELD**

                          By: */s/ Dean L. Chapman Jr.*
                          Dean L. Chapman Jr.
                          Amama Rasani
                          One Bryant Park
                          New York, New York 10036
                          Telephone: (212) 872-8095
                          Facsimile: (212) 872-1002

                          *Attorney for Plaintiff Federal National Mortgage Association*